ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ERRORS

OF THE

# STATE OF CONNECTICUT.

## Bowler *against* Eldredge and others.

18    1
75   108

*A* having in his custody, as marshal of the *Southern* district of *New-York*, a vessel which he had taken, by virtue of a warrant issued by the district court of that district, acting as a court of admiralty, *B*, an officer of the state of *Connecticut*, finding her within its limits, by virtue of sundry writs of attachment against the owners of the vessel, attached her and took her into his custody. On the complaint of *A* to the district court of the district of *Connecticut*, duly sworn to by him, stating the taking of the vessel by him, the forcible removal of her from his custody into the state of *Connecticut*, that she might there be attached by others, the attachment of her there by *B*, that court, without a hearing or notice to *B*, issued a warrant to *C*, marshal of the district of *Connecticut*, signed by the judge and under his seal, directing *C* to take the vessel so in the custody of *B*, and restore her to *A*, to abide the further order of the district court in *New-York*. *C* accordingly took the vessel out of the custody of *B*, for the purposes specified in his warrant; when the district court of *Connecticut* ordered a suspension of the further execution thereof, and the parties in interest were heard before that court upon the allegations in *A's* complaint, which were found to be true, and the first order was confirmed, and was thereupon executed by *C*. In an action of trespass brought by *B* against *C* for taking the vessel, it was held, 1. that the warrant issued to *C*, was not exceptionable, because it came from the judge, in contradistinction to the court; 2. that such process should have been authenticated under the seal of the court; 3. that in a proceeding *in rem* in a court of admiralty, the warrant must be preceded or accompanied by a citation or monition to appear; 4. that an attachment is not of itself the notice required by law, so as to supersede other notice; 5. that a final judgment, rendered without a hearing or notice, is irregular and void; 6. that the order for issuing the warrant to *C* was, in its effects, a final judgment; 7. that consequently, *C*,

**VOL. XVIII.**       1

in taking the vessel under such warrant, was a tort-feasor, and a right of action against him then existed; 8. that of the tort thus committed the subsequent proceedings constituted no justification. But it being alleged in one of the pleas to such action, that while the vessel was in the legal custody of *A*, by virtue of legal process, she was forcibly, and without the consent of *A*, taken possession of, by certain persons, and was by them removed out of his custody; and that *C*, afterwards, by the command of *A*, and as his agent, took the vessel, and restored her to the custody of *A*, that she might be held by him to abide the final decree of the court under whose process she was originally taken; it was held, that one entitled to the possession of property, which has been taken from him wrongfully, may retake it wherever he finds it; and therefore, the facts alleged in this plea constituted a sufficient justification.

This was an action of trespass for illegally seizing the brig *Joseph Gorham*, and taking her from the plaintiffs, who, on the 15th of *September* 1843, as constable of the town of *Darien*, had attached that vessel in sundry suits against *Elisha Seeley* and *Lewis Waterbury*.

The defendants pleaded, 1st, the general issue.

2dly, That the brig in question was libeled in the district court for the *Southern* district of *New-York*, and upon a warrant, legally issued according to the course of proceeding in admiralty cases, was attached and taken possession of, by *William S. Stillwell*, a deputy of the marshal of that district; that he afterwards filed a complaint in the district court of the district of *Connecticut*, duly sworn to, therein stating the libelling of the vessel; the attachment and taking possession thereof by him; that while she was so in his custody, certain persons forcibly took her therefrom, and removed her to the town of *Darien* in the state of *Connecticut*, where she was met and attached, by the plaintiff, at the suit of *Albert Seeley* and others; that she was so removed collusively, and, as the complainant believed, to defeat the attachment in *New-York*, and that she might be attached in *Connecticut;* and that *Stillwell* demanded, and the plaintiff refused to deliver, said vessel. The plea then stated, that upon such complaint, it was ordered by said court, that a warrant to the marshal of the *United States* for the district of *Connecticut* should issue, authorizing and commanding him to take said brig, and to deliver and restore her to the custody of the marshal for the *Southern* district of *New-York*, to abide the order of the district court for that district respecting her; that in conformity to such order, a warrant was duly issued, by the district court for the dis-

trict of *Connecticut,* dated the 5th day of *September* 1843, under the hand and seal of the Hon. *Andrew T. Judson,* judge of said court ; (*a*) that by virtue of said warrant, the defendant *Eldredge,* as marshal of the district of *Connecticut,* and the other defendants, as his servants and by his command, on the day mentioned in the plaintiff's declaration, attached and took away said brig, and restored her to the custody of the marshal of the *Southern* district of *New-York,* and made due return of his proceedings.

<em>Fairfield,</em><br><em>June, 1846.</em><br>Bowler<br><em>v.</em><br>Eldredge.

The 3d plea was the same as the 2nd, with the addition, that after the taking of said vessel on said warrant, upon the representations of certain persons claiming to have an interest in her, the district court for the district of *Connecticut,* on the 9th of *September* 1843, suspended said order, except so far as that the possession of the vessel was to be retained by said marshal *Eldredge ;* and the parties in interest were directed to appear before said district court, to show cause why the petition of said *Stillwell* should not be granted ; that in pursuance of said order, the plaintiff and all others interested

(*a*) Of this warrant the following is a copy :

" To the marshal of the *United States* for the district of *Connecticut,* &c.

" Whereas complaint on oath hath been made to me, showing that on or about the fourth day of *August,* one thousand eight hundred and forty-three, at the city of *Brooklyn* in the *Southern* district of *New-York,* the brig *Joseph Gorham,* her tackle, apparel and furniture were attached, and taken by the marshal of the *United States,* for the *Southern* district of *New-York,* under and by virtue of a certain process of monition and attachment issued out of and under the seal of the district court of the *United States,* for the said *Southern* district of *New-York,* in a certain suit therein pending, wherein one *Hiram Benner* was libellant ; and that while said brig, her tackle, apparel and furniture were in the custody of the said marshal, under and by virtue of the process aforesaid, the same were illegally and forcibly taken and carried away into the town of *Darien* in the district of *Connecticut,* where she was stripped of her sails : Now, therefore, You are hereby commanded, in the name of the President of the *United States* of *America,* to seize, attach, and take the said brig *Joseph Gorham,* her tackle, apparel and furniture (including the sails) belonging to and on board at the time of the attachment first above-mentioned, and to deliver and restore the same to the custody of the said marshal of the *Southern* district of *New-York,* to abide the further order of said district court of the *United States* for the *Southern* district of *New-York,* respecting the same.

" Given under my hand and seal, this 5th day of *September,* in the year of our Lord one thousand eight hundred and forty-three, and of our independence the sixty-eighth."

ANDREW T. JUDSON, Judge<br>of the United States for the District<br>of <em>Connecticut.</em>

in said brig, did appear, and were heard; and that the district court, on the 28th of *September* 1843, found the allegations in the petition of said *Stillwell* to be true, and confirmed the first order; and that therefore, the defendants removed and delivered said brig, as in the former plea alleged.

The 4th plea alleged a libel against the brig, on the 4th of *August* 1843, in the district court for the *Southern* district of *New-York;* process issued by said court, pursuant to the prayer of the libelant; and the attachment and taking possession of the brig, by *Stillwell,* as marshal, by virtue of such process. It was then alleged, that on the 7th of *August* 1843, while the brig was so in the possession of *Stillwell,* certain persons, [naming them] in pursuance of a fraudulent combination between them, forcibly removed the brig out of the custody of *Stillwell,* without his consent; and that the defendants, afterwards, on the 5th of *September* 1843, by the command of *Stillwell,* and as his servants and agents, took the brig, and restored her to his custody, that she might be held by him to abide the final decree of said district court.

These pleas, except the 1st, were demurred to; and the questions arising thereon were reserved for the advice of this court.

*Hawley* and *Booth,* in support of the demurrers, contended, 1. That the 2nd plea was insufficient. In the first place, it shows nothing but a complaint on oath and a warrant granted thereon, without notice to any one to be affected by it, and does not aver the truth of any fact set forth in the complaint. Secondly, the complaint was not addressed to, nor was the warrant issued by, the district court, but the judge. But thirdly, neither court nor judge had any power, even after notice and on hearing, to issue any such warrant, and it was accordingly *void.* All the powers of the court and of the judge are given by the statute law; and no law of Congress gives such power. See Act *de* Courts. Act of *February,* 3rd, 1807. 4 *Dall.* 1, 2. Nor is there any power *incidental* to a court, which authorizes such a proceeding. Fourthly, if either court or judge had power, under any circumstances, to issue such a warrant, that power was not properly exercised here; for there was no notice given, no hearing, and no finding of facts which would justify such a warrant. No one

can be legally affected, by a judicial proceeding, which is *final* as to him in its operation, who has not had *notice*. *Denison* v. *Hyde*, 6 *Conn. R.* 508. *Painter* v. *The Liverpool Oil Gas Light Company*, 3 *Ad. & El.* 433. (30 *E. C. L.* 131.) *Buttrick* & ux. v. *Allen*, 8 *Mass. R.* 273. *Bissell* v. *Briggs*, 9 *Mass. R.* 462. *Kilburn* v. *Woodworth*, 5 *Johns. R.* 37. *Phelps* v. *Holker*, 1 *Dal.* 261. *Borden* v. *Fitch*, 15 *Johns R.* 121. And a *finding of facts*, is indispensable. That such a warrant, not preliminary to any enquiry, not liable to be dissolved or countermanded on a hearing, but final, and remedilessly final, in its operation, should be issued on a mere complaint not found to be true, would be an anomaly in jurisprudence. Such a warrant is void upon its face. *Wickes* v. *Clutterbuck*, 2 *Bing.* 483. (9 *E. C. L.* 490.) *Buttrick* & ux. v. *Allen*, 8 *Mass. R.* 273. *Mills* v. *Martin*, 19 *Johns. R.* 7. *The King* v. *Pitts*, *Doug.* 662. *Starr* v. *Scott*, 8 *Conn. R.* 480. *Hall* v. *Howd*, 10 *Conn. R.* 514. Fifthly, this warrant wants the statutory requisites—the attestation of the clerk and the seal of the court. Act of *May* 5th, 1792. *s.* 1. Sixthly, aside from all these objections, no power is given, by the laws of Congress or the constitution of the *United States*, to any judge or court, to take the property out of the custody of an officer of the state, holding it under the legal process of the state. The contest between these attaching officers, is to be settled, not by forcible interposition, but by due course of law. There was a sufficient remedy for *Stillwell*, by resort to our courts under whose process the property was taken and holden, *viz.* by replevin, by trespass or trover.

2. That the 3rd plea was equally insufficient. This plea alleges a seizing and taking away under the original warrant, as at first issued ; and is, of course, obnoxious, to all the objections to the first plea. Now, in the first place, if the warrant, when issued and executed, was invalid, no subsequent proceedings could validate it or purge the trespass. Secondly, the appearance of the parties before Judge *Judson* did not help the case ; for no appearance can give jurisdiction when the law gives none. Besides, the parties appeared to object to all proceedings : there was no acquiescence. Thirdly, this part of the plea alleged *no facts.* The finding there set out, is mere evidence ; and the statement of evidence, without alleging the facts, is of no avail in pleading.

*Fairfield,*
*June, 1846.*

Bowler
*v.*
Eldredge.

3. That the 4th plea was also insufficient. The plaintiff held, not in his own right, but as an officer of the state, and under process of the state. The process was valid ; and his taking under it was not a trespass. *Luddington* v. *Peck,* 2 *Conn. R* 700. *Swift* v. *Chamberlain,* 3 *Conn. R.* 537. *Tarleton* v. *Fisher* & al. *Doug* 671. 676. *Reynolds* v. *Corp* & al. 3 *Caines* 267. *Nichols* v. *Thomas,* 4 *Mass. R.* 232. 234. *Cameron* v. *Lightfoot,* 2 *Bla. R.* 1190. *Parsons* v. *Lloyd,* 3 *Wils.* 341. 345.

The *right of recaption* extends to no case like this. It justifies no breach of the peace ; no violation of any law ; no resistance of any legal process ; no invasion of the custody of the law.

*Bissell* and *Dutton,* contra, contended, 1. That the 2nd plea was sufficient. In the first place, it shows a right to the property in *Stillwell.* The jurisdiction of the district court in *New-York,* is unquestionable. *Ing. Dig.* 369. And the libel was sustainable. *Dunl. Adm. Prac.* 54. *The Jerusalem,* 2 *Gallis.* 345. 348. *The Aurora,* 1 *Wheat.* 96. *The General Smith,* 4 *Wheat.* 438. 3 *Kent's Com.* 168, 9. Secondly, it shows a right in *Eldredge* to do what he did. The district court of *Connecticut* had jurisdiction. There was a libel regularly filed. *Dunl. Adm. Prac.* 111. The warrant frequently issues without a monition. *Betts. Adm. Prac.* 28. *Hall's Adm. Prac.* 132, 3. And this is always the practice in this district. The seizure is notice to the parties in interest. Per *Marshall,* Ch. J. 9 *Cranch* 126. The district court of *Connecticut* is a portion of the judiciary system of the general government : both courts were appointed by that government : and one can aid the other in its process. A court of admiralty will lend its aid to carry into effect the proceedings of foreign courts ; (*Dunl. Adm. Prac.* 27. 47.) and a *fortiori* it will aid the process of another court of the same country. Courts of admiralty and of equity frequently decree, in a summary way, the delivering up of specific articles. *Dunl. Adm. Prac.* 181, 2. *Slocum* v. *Mayberry* & al. 2 *Wheat.* 1. 1 *Mad. Ch.* 402. 2 *Sw. Dig.* 16. A decree may be good *in rem,* though void as to the party. *Aldrich* v. *Kinney,* 4 *Conn. R.* 387. *Phelps* v. *Holker,* 1 *Dal.* 264. Thirdly, the proceedings, if erroneous, are sufficient to justify the officer.

*Perry* v. *Hyde*, 10 *Conn. R.* 329.    *Holcomb* v. *Cornish*, 8 *Conn. R.* 375.    *The State* v. *Franklin*, 9 *Conn. R.* 32. *Prince* v. *Thomas*, 11 *Conn. R.* 472.    Fourthly, if the decree and process are totally void, the plea shows that the plaintiff had no right against the defendant, who was virtually the *servant* of *Stillwell.*    1 *Sw. Dig.* 531.

*Fairfield,*
*June, 1846.*

Bowler
*v.*
Eldredge.

2. That the 3rd plea was a sufficient answer to the declaration.    The warrant justified the taking ; and the delivery was under a decree of the court, *on hearing.*    The appearance before Judge *Judson* waived the want of a monition. *Penhallow* & al. v. *Doane's* admrs, 3 *Dal.* 54. 86.    The issue whether the taking was lawful, was presented by the plaintiff to the court, and decided.    This is conclusive.

3. That the 4th plea was clearly good.    A man may rightfully take his property from one who has got it wrongfully. 3 *Bla. Com.* 4.    1 *Sw. Dig.* 460.    Trespass will not lie against the party who is entitled to the possession.    1 *Chitt. Plead.* 168. [127.]    *Graham* v. *Peet,* 1 *East* 244.    2 *Wms. Saund.* 47. *c.*

WILLIAMS, Ch. J.    The justification in the second plea depends entirely upon the warrant issued by Judge *Judson,* upon the libel or complaint of *Stillwell.*    That complaint asserts his lawful possession of the vessel as marshal, and an unlawful caption of the vessel from him by *Seeley* and others, to defeat that process, and so that it might be attached in this state.    It admits that the plaintiff was an officer of this state, and was legally directed to serve process upon the property of the defendant, in those suits, and they had an interest in this vessel ; and it does not charge the plaintiff with any collusion in the removal of this vessel, or aiding therein.    But he claims a restoration of the vessel, on account of his prior lien thereon ; and the district judge makes his order that the brig be restored accordingly.

These officers then of the state and the *United States* appear each to have acted fairly, in pursuance of directions from the authorities under which they are called to act ; and the question would seem to be, who had the superior right. Shall the authority of the state yield to that of the *United States*, or *vice versa?*    Before we reach that enquiry, another is presented, whether the proceedings under which the

Bowler
*v.*
Eldredge.

officers acted, are regular, and such as will convey the authority they import.

As to the writs in the hands of the plaintiff, it is not denied, that they are regular, and give him authority to attach this vessel, aside from the claim set up by the defendant under *Stillwell.*

This then brings us to consider the claim as set out in the second plea; for unless that warrant is a justification, this plea must fail. And here it is not without reluctance, that we enter upon the enquiry, whether the district court of the *United States* has not misconstrued its powers, or whether it has not been inadvertently led into an unwarranted extension of those powers. It is an office which we would not seek, and which we would avoid, if we could with justice to the parties; but it is one from which we may not shrink, when it directly meets us. An officer of our own claims that he has been interrupted in the discharge of his legal duties, and asks the protection of the court; and while we have no desire to extend our jurisdiction, or encroach upon that of others, we feel bound to hear the complaints of all regularly before us, and especially of those who have acted faithfully in the discharge of those duties conferred upon them, by the laws of the state, which they have sworn to execute, whether the acts of which they complain are the result of design or mistake. And this brings us to the enquiry, whether the warrant under which *Eldredge* acted in seizing this property, was duly issued.

We waive the consideration of the general enquiry as to the extent of the powers of the courts of admiralty in this country, as a question of great difficulty, especially when we advert to differing opinions of different judges of the supreme court upon this subject; whether the extended jurisdiction, claimed by Judge *Story* for those courts, is to prevail, or the more limited jurisdiction, as contended for by Judges *Johnson, Baldwin* and *Thompson;* (*De Lovio* v. *Boit* & al. 2 *Gallis.* 398. *Ramsay* v. *Allegre,* 12 *Wheat.* 611. 638. *The Sachem* v. *The James & Catharine,* 1 *Bald.* 534.) we do not think it necessary to enquire, for the purposes of this case; hoping that it may be finally settled, by the supreme court, in such a manner as to secure to our citizens those privileges, which the constitution, as amended, was careful to protect.

It was objected to this warrant, that it came from the *judge*, and not from the *court*. It seems, that a libel should be filed in court, at a regular term or a special court ; and to facilitate business, the practice is, in some districts, to adjourn the court from week to week, so as to have a regular term day every week. *Dunl. Adm. Pr.* 130, 1. But the late Chief Justice *Marshall* has held, that as the judge has power to hold special courts, he is a court wherever and whenever he pleases ; and that he may be considered as a court whenever he proceeds upon judicial business, whether he declares himself a court, or not. *The U. S. Schooner Little Charles*, 1 *Brock.* 382.

Another objection has been made to this process, that the act of Congress requires that all writs and processes issuing from a district court, shall bear *teste* of the judge of such court, and shall be under the *seal of said court*, and signed by the clerk thereof. Act of *May*, 8, 1792. As this is the verification expressly required by statute, we do not see how it can be dispensed with, unless that statute is repealed, or the court have legally dispensed with it.

Without going into a particular discussion of this question, or others which have been presented at the bar, our attention will be directed to a single one.

It appears, that on the 5th day of *September*, 1843, *Stillwell*, a deputy of the marshal of the *Southern* district of *New-York*, filed a petition or libel in the district court for the district of *Connecticut*, stating the process in admiralty, under which he had attached and held this brig, and that she was forcibly taken from him, and brought into the district of *Connecticut*, without his consent, and there attached ; all which was done to defeat the attachment in *New-York*, as he believes ; praying for a warrant to seize and return her ; which complaint was sworn to, by said *Stillwell*. In compliance with which, the warrant in question, counting upon the facts stated in the complaint, was granted, directing the marshal to seize and attach said brig, and restore her to the marshal of the *Southern* district of *New-York*, and abide the further order of said court of the *Southern* district of *New-York*.

The warrant, assuming that the facts upon which it counts are true, directs that property in the custody of an officer of this state, under process of our law, duly executed, shall be

*Fairfield,*
June, 1846.

Bowler
*v.*
Eldredge.

taken out of his hands, without any proof of the facts, except the oath of the applicants, and without giving that officer the least opportunity to remonstrate, or to be heard. So far from it, it turns him over to a court of another district, who can have no jurisdiction of the complaints of this officer, unless conferred by the district judge of the district of *Connecticut.*

We have been taught to believe, that it is a principle of natural justice of universal obligation, that before the rights of an individual can be bound by a judicial sentence, he shall have notice, actual or implied, of the proceedings against him. So says *Marshall,* Ch. J., in the case of *The Mary, Stafford,* master, 9 *Cranch* 144. 1 *Brock.* 328. And this court has said, that any law authorizing a process, by which the property of *A* can be taken to satisfy a debt against *B*, or for any other purpose, without giving *A* notice to defend, is opposed to common right, and ought not to be enforced by any tribunal. *Denison* v. *Hyde,* 6 *Conn. R.* 519. With this principle for our guide, let us examine the warrant before us.

It is an order to an executive officer, to take property from an officer who has come into the legal possession of it, without any hearing, and without an opportunity for a hearing; for it is peremptory to take it, and deliver it over, out of the reach of the process of any tribunal in this state ; and it is to do it *forthwith.* It proceeds upon the assumption that the possessor can have no justification, or none which the court which granted the warrant, can regard. It is, therefore, a judgment, passed without a trial, without a notice, and which as to its effects, must be final. It places the officer who has attached this vessel, in the condition that he must answer to the creditors for this property, or show that it has been taken from him in due course of law ; and this, without any fault on his part, or opportunity to show it. We must have strong evidence that the law recognizes such a proceeding, before we can countenance it. Where is this law to be found ? We are told, that this is according to the course of proceedings in admiralty. Such a process has not been shown us ; and we have looked in vain to find it. On the contrary, so far as we have been able to learn the practice, it is very analogous to our practice in civil cases.

In actions of a civil or maritime nature, a mandate or war-

rant is procured from a judge to arrest the defendant, and detain him until he appears; or where one man's goods are detained by another, a warrant may be obtained to arrest the goods, and a citation, as well against those detaining them, as against all other persons in general, who claim any interest in them, to answer. Such are the rules of practice, as laid down in the best authorities. *Clerk's Prac. tit.* 1. 41. *Hall's Adm. Prac.* 1. 81.

*Fairfield.*
June, 1846.

Bowler
*v.*
Eldredge.

It has been said, that this being a proceeding *in rem*, the attachment is itself notice. Doctor *Brown*, an eminent modern writer on civil and admiralty law, says, when the proceeding is against the ship for debt, process commences by a warrant directed to the marshal of the court, to arrest the ship ; or with a citation to the master and all in interest, to appear. And he further says, a possessory suit to recover a possession, which has been, by some means, illegally ousted, detained, or taken away, is of a different nature, in its origin and object ; but the process is the same as above described. 2 *Bro. Civ. & Adm. Law*, 396–405. And a writer of our own says, when a ship is libelled to enforce a lien, a maritime or admiralty summons is usually issued, in the first instance, to the master, or owner, or persons having the custody of the ship, to appear and show cause why admiralty process *in rem* should not be awarded. *Dunlap's Adm. Pr.* 81.

By our practice, then, the monition usually issues first; by the *English* practice, the attachment and the monition go together. But none of these writers intimate, that an attachment ever can be issued, unless preceded by, or accompanied with a summons or monition. And it must be served, by producing the original before the master and owner, and affixing a copy to the mast of the ship, of which affidavit must be made; and if the arrest is made abroad, it must be certified under some authentic seal. 2 *Brown's Civ. & Adm. Law*, 398. Such is the care with which this process is guarded.

If it be said again, that the attachment is notice, the answer is, it is not the notice required by law, or the course of practice ; nor is it in fact notice of any thing, but the attachment itself. The first that is known of its existence, may be, by hearing that the vessel is removed to another jurisdiction. So far from being in its effects, any more than in its

*Fairfield,*
June, 1846.

Bowler
*v.*
Eldredge.

terms, a direction to appear and show cause against the order, it will, if complied with, effectually prevent the party from showing cause ; for it is to seize the vessel, and deliver her to the custody of the marshal of *New-York.* So far, therefore, from the usual order spoken of in the *English* authorities, to seize the vessel, and cite the party to show cause, at a given time, it is an order which must prove to him, that the court has settled the rights of the parties, and will hear nothing further : it is the execution succeeding a judgment, and not the attachment accompanying a summons.

It may be said, that the warrant is to deliver the brig to the custody of the marshal of the *Southern* district of *New-York,* to abide the order of that court. We think, however, it cannot be seriously claimed, that any district judge has a right to arrest property in the district, and send it out of the district, because the owner may go there to reclaim it. When such guards are thrown about our citizens, to prevent their being forced by suits before courts in other states, we shall not readily believe, that power impliedly rests in the district court, which may have this effect.

But it has been contended, that courts of admiralty have the power, and it is their duty, to carry into effect the decrees of foreign admiralty courts. And so will the courts of common law carry into effect the judgments of other foreign tribunals regularly rendered. The reported cases prove no more than that the admiralty courts will do the same thing. *Anon. Cro. Eliz.* 685. *Jurado* v. *Gregory,* 1 *Vent.* 32. *S. C.* 1 *Lev.* 207. *Turner* v. *Neele,* 1 *Lev.* 243.

There is one case found in the abridgments, where it is said, if a man of *F.* sues an *Englishman* in that country, before the governor there, and recovers a certain sum, and the defendant returns to *England,* and the governor sends his missive into *England, omnes magistratus infra regnum Angliæ rogans* to make execution of said judgment,—the judge of admiralty may execute this judgment, by imprisonment of the party, and he shall not be delivered by the common law ; for this is by the law of nations, that the justice of one nation, should be aiding to the justice of the other ; and the law of *England* takes notice of this law ; and the judge of the admiralty is the proper magistrate for that purpose ; for he only hath the execution of the civil law within the realm.

1 *Rolle's Ab.* 530. *pl.* 12. 6 *Vin. Ab.* 512, 13. If by this is meant that a judge of admiralty would imprison the person without further process, we do not believe that at the present day any judge would venture such an experiment. If it only means that the claim might be pursued in the admiralty, then it would be nothing more than the other cases cited.

*Fairfield*, June, 1846.

Bowler
*v.*
Eldredge.

These are all cases where judgment has been rendered; but no case has been produced, where a court in *Great-Britain* has been called upon to aid a foreign court in the execution of *its own process.* If this were attempted, a prohibition would lie. 2 *Brown's Civ. & Adm. L.* 121.

Again, it is said, that the district courts are all component parts of one great judicial power; and therefore, one may assist the other. The connexion is not closer than that existing between our own courts in the states; and yet such a kind of auxiliary power was never supposed to spring from this relation; and we must find some express statute, or some well settled practice, before we can adopt it. We are, therefore, compelled to come to the result, that the warrant under which the defendants acted, was unauthorized and irregular.

The defendants further contend, that courts of admiralty are courts of general jurisdiction; and therefore, that an officer acting under process issued by them, is to be protected.

Whether these courts possess a general jurisdiction, as the defendants claim, or whether they are to be considered as courts of limited jurisdiction, as *Marcy*, J. held, in *Savacool* v. *Boughton*, 5 *Wend.* 172. & seq. we do not stop to enquire; because here the want of jurisdiction, or the illegality of the order, appears upon the face of the warrant put into the hands of the officer: the whole is spread before him. And the rule is, that whether the court possesses general or limited jurisdiction, yet if the process upon its face shows they had no authority to issue it, no officer can be justified in executing it. *Elliot* v. *Piersol*, 1 *Pet.* 340.

If the court be a court of limited jurisdiction, and it has not jurisdiction of the subject or the person, its sentence can justify no one, but is a nullity. But when the court is a court of general jurisdiction, the want of jurisdiction must appear upon the face of the proceedings, or the officer will be justified. *Ladbrook* v. *Cricket*, 2 *Term R.* 653. *Savacool* v. *Boughton*, 5 *Wend.* 170. 178. *Grumon* v. *Reymond*, 1

*Fairfield,*
*June, 1846.*

Bowler
*v.*
Eldredge.

*Conn. R.* 40.    *Cutler* v. *Wadsworth,* 7 *Conn. R.* 6.    In the case last cited, the defendant had in his hands to execute a precept from the superior court, duly signed, and purporting to be founded upon a judgment duly rendered by the superior court in *Hartford* county, on the 4th *Tuesday* of *February;* but the day for holding that court was on the 2nd *Tuesday* of *February;* and although the court actually did sit on the 4th *Tuesday,* this court held, that the officer was justified in not executing that process. This case seems at least as strong as that.

Here, the judge, without trial, upon the affidavit of a party, directs that property in the hands of *H.,* shall be taken from him, and delivered over to a person in another state—not then to abide the order of any court in this jurisdiction, but to abide the order of a judge in another state. It is not attested by the clerk; nor does it bear the seal of the court. If this order be an illegal one, this officer was as much bound to know it, as he would have been to know that the court did not sit in *Hartford,* on the 4th *Tuesday* in *February,* but that it began its session on the 2nd *Tuesday.* And if that officer was justified in not executing that order, we must consider this officer justified in not executing this.

Again, it is said, that this plaintiff could have no right to retain this vessel, because he could have no right greater than that of those who unlawfully took her away: that his possession therefore was wrongful, and he cannot sustain an action of trespass.

To support this argument, the defendants assume, that the facts relating to the illegal taking of this vessel, are all admitted to be true; whereas in the plea, they are all stated as depending upon the returns or affidavits of *Stillwell,* or on the decree of the district court; and unless those papers are to be considered as evidence of that fact, it does not appear to the court, and of course we are not called upon, by this plea, to decide, who has the better title.

It is claimed by the defendants, that whatever may be the opinion of the court as to the 2nd plea, yet as it is shown in the 3rd plea, that the defendants came before the district court, and submitted to the jurisdiction; and as that court has enquired into the merits of the claim, and passed upon it, those rights are now settled; and the plaintiff is precluded from

any further demand. To test this argument, we must look at the facts. The declaration charges the defendants with a trespass, in illegally seizing this brig, on the 5th of *September*, 1843. The defendants justify, under an order of the district court of that date, this taking. We have held that justification invalid. They now, in the 3rd plea, repeat the same facts, with this addition, that after this seizure, on the 9th of *September*, certain persons claiming to have an interest in said brig, made such representations to the district court, that a suspension of said order was directed, (except so far as to enable the marshal to hold said brig, and until the further order of said court,) and an order of appearance was had, and the parties appeared, and a hearing had, and a final order given, on the 28th of *October*, 1843. Now, without enquiring into the validity of the decree of the 28th of *October*, it seems to us, that it is enough to say, that a decree of the 28th of *October*, whatever it can justify after it was passed, can form no justification of a tort committed on the 5th of *September*, previous; and that the defence in the 3rd plea does not meet the trespass alleged in the declaration. We say, as was held by the court, in *Denison* v. *Hyde*, the tort was then complete—[when the brig was taken,] and a right of action in the plaintiff then existed. 6 *Conn. R.* 519.

It is true, in that case, that no judgment was ever rendered. But we do not see how it could make any difference whether a judgment was rendered, or not; or how a right of action existing in the plaintiff, can be affected by a subsequent judgment.

The 2nd and 3rd pleas, therefore, we advise, are insufficient.

The 4th plea rests upon very different considerations.

The defendants do not, in that, rely upon a decree or order, the correctness of which cannot be examined; but they say, the facts which exist will justify the acts they have done; and they offer to prove these facts before the court.

They say, this vessel was in the legal custody and possession of an officer of the *United States*, by virtue of legal process and has been wrongfully taken out of his possession; and he therefore has a right to repossess himself of it; and this he did through the defendants, who acted as his servants and agents, and by his authority.

The plaintiff, on the other hand, contends, that if this were

*Fairfield,*
June, 1846.

Bowler
*v.*
Eldredge.

so, they had no right to take this property by force, out of his possession; that it was in custody of the law, and must there remain, until taken out by legal process.

It is not claimed, that any force was used by the defendants, but such as is implied in every wrongful act of trespass. The words *vi et armis* imply nothing more. 3 *Burr.* 1701. 1731. The question then arises, whether if this property has been illegally taken from the custody of the defendant, he may repossess himself of it.

As to real estate, there cannot be a doubt that at common law, if the owner was dispossessed, he might, within a reasonable time, if he could not prevail by fair means, enter by force and take possession of his own estate. 1 *Hawk. Pl, Cr. ch.* 64. *p.* 274. 13 *Vin. Ab.* 380. *Co. Litt.* 257. *n.* 1. *Hyatt* v. *Wood*, 4 *Johns. R.* 150. *Ives* v. *Ives*, 13 *Johns. R.* 237. And although to prevent breaches of the peace, and the oppression of the weak, by the powerful, forcible entries are by statute restrained, yet even at this day, if a tenant hold over, and the landlord takes possession, by force and strong hand, so that he may be indicted for a forcible entry, the tenant cannot treat him as a trespasser. *Taunton* v. *Costar*, 7 *Term R.* 431. And in a more recent case, where the landlord broke open the doors of the house with a crowbar, after his tenant's lease had expired, no person being in, and only some of the tenant's furniture remaining, he was justified in an action of trespass brought by the tenant against him. *Turner* v. *Meymott*, 1 *Bing.* 158. (8 *E. C. L.* 280.) And it is said, by a highly respectable writer on common law, the force may not be justifiable; the party may be answerable for a breach of the peace, or a forcible entry; but not in an action of trespass, to a party in the wrongful possession; for the possession is a sufficient ground to sustain an action of trespass against a wrong-doer. It is otherwise, when the person entering shows a legal title. *Read's* case, 6 *Rep.* 24. 2 *Saund.* 47. *c.* *Hyatt* v. *Wood*, 4 *Johns. R.* 158. 1 *Johns. R.* 44. And it is said, by the author of the commentaries, that where one is deprived of his property in goods or chattels personal, or where one's wife, child or servant is wrongfully detained, the owner, husband, parent or master may lawfully claim and retake them, wherever he happens to find them.

3 *Bla. Com.* 41.  1 *Sw. Dig.* 461.  And a writer on criminal law of high authority says, " It seems certain, that even at this day, he who is wrongfully dispossessed of his goods, may justify the retaking of them by force, from the wrong-doer, if he refuses to redeliver them ; for the violence which happens through the resistance of the wrongful possessor being originally owing to his own fault, gives him no just cause of complaint, inasmuch as he might have prevented it, by doing as he ought."  1 *Hawk. Pl. Cr.* 274. *ch.* 64.  *Blackstone* and other commentators very properly say, that this may be done, provided it be not done in a riotous manner, and not attended with a breach of the peace.  They do not, however, by this mean, that if a husband reclaims his wife, or a parent his child, or an owner his goods, he will for such act be liable in an action of trespass to the wrong-doer ; though he might be answerable for a breach of the peace.  *Hawkins* explains this more fully than the other authors above cited, when speaking of forcible entry ; for, says he, however he may be punishable at the King's suit, for doing what is prohibited by statute, as a contemner of the law and disturber of the peace, he shall not be liable to pay any damages for it to the plaintiff, whose injustice gave him the provocation in that manner to right himself.  *Ch.* 64. *sect.* 2.  And in *Lee* v. *Atkinson, Cro. Jac.* 236. S. C. *Yelv.* 172. where the owner of a horse let it for two days, and finding that the person who hired it, was going another way than that for which he hired the horse, by force retook the horse within the two days ; it was held, that he was not justified, not because he might not have right to retake his own, but he had parted with the possession for those two days ; thus recognizing the right of recapture, though not under such circumstances.  So too, if a distress is taken, without cause, or contrary to law, before it is impounded, the party may rescue it.  *Co. Litt.* 160–1. 3 *Bla. Com.* 12.  *Cotsworth* v. *Betison,* 1 *Ld. Raym.* 104. S. C. 1 *Salk.* 247.

It is said, however, that this property was in custody of the law ; and therefore, the defendants had no right to reclaim it, in this way.  That must depend upon the other question, whether it was lawfully detained by the officer ; for if not, his official character could not give him, as against him who had a prior claim, a right.  His process, though good as against

*Fairfield,* June, 1846.

Bowler *v.* Eldredge.

the party, would not give him a right to take the goods of a third person, or the goods of this person out of the lawful possession of another.

This court has decided, that a person committed to prison under an illegal process, was not accountable, in a public prosecution, for freeing himself from that imprisonment, even by a breach of the peace. And we are of opinion, that the marshal of *New-York,* having the legal custody of this property, had a right to repossess himself of it, when in the hand of this plaintiff. We therefore are of opinion, that the 4th plea is sufficient ; and so we advise the superior court.

In this opinion the other Judges concurred.

Demurrer to 2nd and 3rd pleas sustained ;
To 4th plea overruled.