In Special Term, June 1854—GHOLSON, J. presiding.

### NORTHERN BANK of KENTUCKY *v.* NASH & GUILD.

There are instances where on motion by the defendant, the Court will discharge an attachment as to a part of the property attached; but the burthen of showing that a particular piece of property should be discharged, is upon the party applying.

The right to discharge on motion, must be limited to cases where defendant shows an interest in the motion, and is prejudiced either by the granting, or by the operation of the attachment.

Where, however, a motion is made to discharge an attachment, on the ground that it was wrongfully obtained, no question, as to the interest of the defendants in the property attached, will prevent a full inquiry into the correctness of the grounds on which the attachment was predicated.

Though a defendant may move to discharge a part of the property attached, on the ground of excessive levy, or exemption by law, he cannot by this method raise a question as to the extent or nature of his title.

*Query*, whether an equitable interest may not be attached under the Code?

This case was before the Court, on a motion to discharge an attachment as to a certain lot, levied on as the property of the defendant, Charles Guild.

FERGUSON and LONG for the motion. KING, ANDERSON, and SAGE, contra.

20

GHOLSON, J.

The order of attachment in this case, was issued on two grounds, stated in the affidavit of the cashier and agent of the plaintiff. The motion to discharge is made upon affidavits, procured on the part of the defendant Guild, who makes the motion, and is resisted upon affidavits on the part of the plaintiff. I have looked through the affidavits upon both sides, to satisfy myself whether upon the statements and facts presented, it was proper that the order of attachment should be retained, and it appears to me that the plaintiff is entitled to the benefit of the order of attachment.

This point does not seem to be contested by the counsel for the motion, who limit their application, to the exemption from the operation of the attachment, of a certain piece of property, and tacitly admit, that the attachment ought to stand good, as to any other property levied on, or as the foundation for the proceeding against the garnishee. The attachment, then, having properly issued, the question whether any particular piece of property shall be withdrawn from its operation, is, to my mind, a very different question, from that, which would arise, on the propriety of the attachment itself, and should be decided on different considerations. The burthen of showing upon a motion of this kind, that a particular piece of property should be discharged from the attachment, and the apparent security for his debt obtained by the plaintiff, divested from him, is, unquestionably, on the party applying, and, in my opinion, such showing should be clear and satisfactory. Several instances may be supposed, in which a defendant, not contesting in its entirety the right of the plaintiff to an attachment, might, yet, very properly ask, that a part of the property be discharged.

Although the language of the Code, Section 228, is general, that the defendant may "move to discharge an attachment as to the whole, or a part of the property, attached," the right to a discharge must be limited to the cases in which the defendant shows an interest in the motion, and is prejudiced either by the granting, or by the operation of the attachment.

When a defendant moves to discharge an attachment, on the ground that it has been wrongfully sued out, I should not be inclined to permit any question, as to his interest in the property levied on, to operate, to prevent a full enquiry into the correctness of the grounds, on which the attachment was predicated. In such a case, his interest is clear, for the motion is directed against the foundation of an attachment against all his property. But, when, by the form and object of the motion, and the facts shown, it appears, that the defendant can really have no interest in the matter, cannot be benefitted by the granting, nor prejudiced by the refusal of the motion, and the only effect would be to decide, in a summary manner, a matter of contest between the plaintiff and third persons, which decision would be in no way obligatory on them, and might seriously prejudice the plaintiff, I do not think there is a proper case for the action of the Court.

The question as to the title or interest of the defendant, in respect of its being legal or equitable, appears to fall within the same objection. Although it may be, that under our former Attachment law, an equitable interest could not be attached, I can find no instance, in which such an objection was ever raised by motion. A defendant may be permitted to move to discharge a part of the property attached, on the ground that there had been

an excessive levy, or that the property was exempt by law, but I do not see the propriety of raising in this way a question·as to the nature or extent of his title.

Independent of this objection, I would not discharge property from an attachment on a mere motion, on the ground that the interest of the defendant was an equitable one, unless I was clearly satisfied, that under the Code such an interest could not be reached by attachment. Upon looking at, and comparing Sections 191, 194, 198, 207, 210, and particularly Section 221 of the Code, it would be difficult to say, that the remedy by attachment had not been extended in respect of the nature and description of the property, which may be attached.

I strongly incline to the opinion, that an equitable interest in real estate may now be the subject of attachment; but it is not necessary to decide that question, as the plaintiff, in my opinion, is entitled to have it brought forward in a regular form, and in such shape, that the decision will be obligatory on all the parties interested.

In accordance with these views, the motion will be overruled.

In Special Term, June 1854.—GHOLSON, J. presiding.

### T. B. YOUNG & Co. *vs.* STEAMBOAT VIRGINIA.

In a proceeding under the Common Carrier act, in which a steamboat is attached, a petition must be filed as in other cases, and the answer may be verified by some one authorized to appear and act in steamboat's behalf.

The same strictness of proof may be required under the Code, in rendering judgment by default in such cases, as was required under the law before the Code.

Though for the purpose of being sued, a steamboat is a *quasi* person, and the proceedings under the statute are instituted and carried on against the steamboat by its name or description, they are really and practically between the plaintiff and the owners or master of the boat. Proceedings under the Common Carrier's act, come within the provisions of Sec. 604 of the Code; but as the Code nowhere provides

for such process as a warrant of attachment under the provisions of the Common Carrier's act, recourse must be had to that act to obtain such process, and regulate proceedings under it.

After the return of the attachment, the subsequent proceedings may be in conformity with the Code.

GHOLSON, J.

The motion in this case, though in form, to dismiss the action for want of jurisdiction, has been modified by an understanding during the argument, so as to raise the question whether it be regular and proper to file a petition in accordance with the Code, in a proceeding against a steamboat, under the Common Carrier act? *Swan St.* 185. The counsel for the defendant contends, that the plaintiff can only proceed by filing a declaration in debt or assumpsit, and that it is impracticable to adapt the provisions of the Code to a proceeding against a steamboat. There appears to be no difficulty in respect of the petition. It contains substantially every allegation, and, indeed, more than a declaration in assumpsit for such a cause of action would contain. But, it may be said, the difficulty will occur when an answer is to be prepared; that it was quite easy under the old form of proceeding to file a plea of non-assumpsit, or even a special plea when required, but it will be impracticable to file and verify an answer under the Code. I do not see this difficulty. Who would file the plea? Not the steamboat, but some person authorized to appear and act on its behalf. Why this person might not be required, to plead only what he believed to be true, and to give the evidence of belief, required in other cases, it is difficult to conceive.

It is also said, that where only the steamboat is served by being seized, it would be wrong to enter a judgment on

default, to take the default as an admission of the cause
of action; that such was not the practice before the Code.
If, before the Code, the courts, without any express re-
quisition of law, and different from the usual practice,
were more strict in requiring proof in such proceedings
as this, and with a view to prevent fraud, I see no reason
why it may not still be done.

It is farther argued, that the Code only contemplates
controversies between persons, and that this is an action
against a thing, and, therefore, the provisions of the Code
are not applicable. But this seems to be begging the
question. There can be no controversy between a person
and a thing. We should look at the substance of the
matter, and that is, that the statute, in analogy to some
proceedings *in rem*, regards a seizure of the boat as a suffi-
cient notice to its owners, or to those having it in charge.
No proceeding *in rem* can be maintained without notice,
actual or constructive, to the person or persons interested
in the thing. They, thus, become parties, and the pro-
ceeding one between persons. Limitations have been
placed upon proceedings *in rem*, which do not apply in
ordinary cases; and distinctions, which are well under-
stood, exist between what are termed proceedings *in rem*
and *in personam*. But it would be a mistake to suppose,
that the persons interested are not considered parties, in
one proceeding as well as the other. Any proceeding *in
rem*, framed of such a character as to give no notice, ac-
tual or constructive, would not be, in any just sense, a
judicial proceeding. This is very strongly stated by Judge
Story, in the case of Broadwell *vs.* Neptune Insurance
Company, 3 *Sumn.* 607, 609. The cases of the Mary, 9
*Cranch;* Bowler *vs.* Eldridge, 18 *Conn.* 10, and others,

which need not to be cited, show, that notice to the *persons* interested, is essential in all *judicial* proceedings. In admiralty proceedings a monition or summons, either precedes or accompanies an attachment. The Common Carrier act does not provide for a summons. It was evidently the intent, that the seizure of the steamboat should be deemed a sufficient notice. If a case should ever occur, in which, under the circumstances, it could not be so considered, it would be the duty of the courts to see, that notice in some proper way was given, though not expressly provided by the statute, as was held in Patterson *vs.* Prather, 11 *Ohio* 35. Or, it might be properly held, that such a case did not come within the purview of the law, and that there was no jurisdiction.

It would, therefore, appear, that though, for the purpose of being sued, a steamboat has been considered a *quasi* person, and the proceedings under the statute, are instituted and carried on against the steamboat by its name, or description, they are really and practically between the plaintiff and the owner, or master of the boat. The difference is, that the names of the parties do not appear on the record, which was required in ordinary cases; but in the class of cases, contemplated by the Common Carrier act, such a requisite was inconvenient and sometimes impracticable, and to obviate this difficulty was one of the main objects of that act. Many of the provisions of that act show, that those interested in the steamboat are to be considered as parties in the proceedings under it; and practically, we know, that, in the way of defence, they exercise all the rights of parties. In the present case, the boat was seized. She was immediately released, upon a bond being executed by the master, in

whose charge she was.   The thing, then, is substantially gone, and the controversy is one between persons.

A difficulty has been suggested, why those persons, who represent the boat, cannot defend.   The answer must be in the name of the boat, and no provision is made for the verification of an answer in such a case.   But this, I consider, to be a sticking in the letter of the statute.   When it is held, that, for practical purposes, the owners, or those interested in the boat, are the parties, the difficulty is gone.   The pleading, though in form in the name of the boat, may be verified by the party interested in the boat, his agent, or attorney.

I do not think, there is any substantial reason, after a steamboat has been seized, under the proper process, why the provisions of the Code should not apply to the subsequent proceedings.   The difficulty is, whether the proceeding can be commenced under the Code?   And if not, whether starting under the Common Carrier act, it can be proceeded with under the Code?   The doubt, in the solution of the sequestions, grows out of the language of the Code in Sections 603, 604, and 605.

It was, evidently, the intention of the legislature in enacting the Code, that we should have in our courts a consistent and harmonious system of practice and proceeding.   While general rules were adopted, as to all ordinary actions, certain cases were excepted to prevent inconvenience and trouble, under Sections 603, 604, and 605.   In admitting these exceptions, however, there is an intent manifested, though more clearly as to some classes of cases than others, that all proceedings, whenever it was practicable, should be under the Code.   This general intent of the legislature, to establish a uniform mode of

proceeding in all cases, I shall endeavor to carry into effect, whenever, and so far, as the language of the statutes will permit.

The first point of difficulty is, whether such a proceeding as this, is embraced under Section 604 or Section 605 of the Code ? The counsel for the plaintiff in this case, has strongly contended, that it is embraced under Section 605 ; the Code Commissioners, in their notes, place it under Section 604, "as a statutory remedy not heretofore obtained by action." If it be a statutory remedy not heretofore, that is, before the enactment of the Code, obtained by action, the term "remedy" must have reference to the security, right of preference, or lien, obtained by the seizure of the steamboat, and not the recovery of the debt, or damages, obtained by the subsequent proceedings, which had been, and were required to be in the ordinary form of actions at law ; and in this respect, at least, were, before the enactment of the Code, generally, understood to be actions at law. This distinction, in my opinion, was in the minds of the Commissioners, when they placed proceedings under the Common Carrier act, within the provisions of Section 604, and considering the matter in this view, they appear to me to have been right.

Assuming, then, that the institution of a proceeding under the Common Carrier act was embraced in Section 604, still, that Section provides that "it may be prosecuted under the Code whenever it is applicable." The Code, however, nowhere provides for such a process, as a warrant of attachment under the Common Carrier act; and it seems to be clear, that to obtain such a process, and regulate the proceedings under it, recourse must be had to that act.

21

And, then, the question arises, whether the proceedings, having been commenced under the Common Carrier act, may, after the return of the warrant of attachment, be conducted; as to the subsequent proceedings, in conformity with the Code? In my opinion, they may be so conducted; and I have arrived at this conclusion, in view of the general intent, manifested by the legislature in framing the Code, and the Sections to which I have adverted, and the absence of any prohibition to the contrary. There is, not only no prohibition; but, I think, a fair construction of Section 604 will expressly authorize the proceedings subsequent to the return of the warrant, to be conducted under the Code. It is said in Section 604: "Such proceedings may be prosecuted under the Code whenever it is applicable." When a proceeding consists of different parts, or stages of progress, to any of which the provisions of the Code would be properly applicable, there can be no good reason, why they should not be so applied. It would appear, to be authorized by the language cited; and, indeed, if that clause of Section 604 only applies to those statutory remedies, which can be, entirely, and in all respects, carried out under the Code, it would probably be found to have scarcely any operation.

The conclusion to which I have arrived, is, also, in accordance with a construction, which may very reasonably be given to the Common Carrier act. That act, after providing the special remedy against steamboats and other water-craft, and directing the mode in which a warrant may issue and be executed, in Section 6, provides, "That upon the return of the writ, the pleadings and proceedings shall be, as in other cases of process, served and returned." It cannot well be, that it was the intention of the legisla-

ture, by the language thus used, to limit the character of the pleadings and proceedings to be had upon the return of the warrant, to those in use at the time of the passage of the act, thus cutting off the benefit of any change which might take place as to other cases. The time, in view, would rather appear to be that of the return of the writ.

We must, then, look to the character of the pleadings and proceedings *in other cases*, as of that time, and, unless a mode is thereby given of conducting such pleadings and proceedings against a steamboat, there is none other provided by law.

If this latter view be a correct one, the result would be, that the *pleadings* in a case against a steamboat, under the Common Carrier act, not only may, but must be conducted in the form prescribed by the Code. But it is unnecessary in the present case to go so far. It is sufficient to say, that in view of the different provisions of the statutes, I am satisfied, they may be so conducted, and the motion will, therefore, be overruled.

MILLS & HOADLY for plaintiffs. T. D. LINCOLN for defendant.